**COASTAL AIRLINES, INC., d/b/a National Air, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

No. 82–1880.

United States Court of Appeals, First Circuit.

Argued May 6, 1983.

Decided June 9, 1983.

---

**120**

Jonathon D. Friedmann, with whom Lewis A. Sassoon, and Gargill, Sassoon & Rudolph, Boston, Mass., were on brief, for petitioner.

David Schaffer, Atty., C.A.B., Washington, D.C., with whom Ivars V. Mellups, Acting Gen. Counsel, C.A.B., Thomas L. Ray, Asst. Gen. Counsel, C.A.B., William F. Baxter, Asst. Atty. Gen., Dept. of Justice, Robert B. Nicholson, and Edward T. Hand, Attys., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before COFFIN and BREYER, Circuit Judges, and BONSAL,* Senior District Judge.

BREYER, Circuit Judge.

The Airline Deregulation Act of 1978, Pub.L.No. 95–504, 92 Stat. 1705, allows the Civil Aeronautics Board (the "CAB" or "the Board") to subsidize essential air service to towns that lost such service due to deregu-

lation. Federal Aviation Act, § 419(b), 49 U.S.C. § 1389(b). The Act sets forth one list of criteria, such as cost, potential traffic, and community isolation, that the Board is to use in deciding which communities are eligible for the subsidy. *Id.* § 1389(b)(2)(A). The Act also sets forth another list of criteria that the Board is to use in selecting the carrier to provide the service and receive the subsidy; it includes the desirability of developing an integrated route system and the carrier's experience in providing scheduled air service in the vicinity of the eligible community. *Id.* § 1389(b)(5)(A)(i)–(ii). The Board has promulgated its own regulations elaborating on these criteria. 14 C.F.R. §§ 270, 398.

Coastal Airlines, a losing applicant for one of the CAB's subsidized routes, here challenges a Board decision awarding Air Vermont a one-year, $360,000 subsidy to provide six day per week service to Berlin, New Hampshire and Newport, Vermont from Burlington, Vermont and Boston. The record suggests that it was difficult for the Board to determine the amount of the subsidy, the route configuration, and the carrier, for the Board, its staff, the two towns, and the carriers disagreed with each other; the selection process involved repeated proceedings and reconsiderations before a final decision was reached. But it is precisely this kind of difficult decision that Congress entrusted to the agency rather than to this court. We find no legal error.

■ Coastal claims that the Board should not have included Newport in its route selection, because Newport does not generate enough traffic to satisfy the Board's general criteria as an "eligible point." *See* 14 C.F.R. § 270.11. However, the regulations on which Coastal relies set forth criteria that make a town eligible when the town *stands alone.* Here, the Board *added* Newport to a subsidized route that would already include Berlin, an independently "eligible point." Newport will generate additional traffic; it is relatively isolated, being a two hours' drive from the small "hub" at Burlington, and adding it to the route

(while increasing the total subsidy cost by $44,000) lowers the per-passenger subsidy from $204 to $120. These factors bring Newport well within the scope of the statutory criteria, and also within the Board's own regulations as they might reasonably be extrapolated to apply to "add-on" towns. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565–66, 100 S.Ct. 790, 796–97, 63 L.Ed.2d 22 (1980) (agency interpretation of its own regulations dispositive unless "demonstrably irrational"). Coastal adds that the Board changed its mind about the importance of Newport's added overall cost, since it initially indicated that it would add Newport only if the addition reduced the total subsidy. However, the Board changed its mind explicitly; it did not mislead Coastal or otherwise treat it unfairly; and it is the very purpose of further proceedings and reconsiderations to allow an agency to change its mind.

■ Coastal also seeks to reargue the merits of the Board's carrier selection by disputing various Board findings about its own experience, Air Vermont's preparedness, community support, and relative cost. The Board found that Air Vermont had more experience in light of its past scheduled service than Coastal, which had not previously provided scheduled service. The facts that Coastal cites—that it had previous *charter* experience, that its employees had previous flight experience with other scheduled carriers, and that it could satisfy the threshold "fitness" requirement, *see* 49 U.S.C. § 1389(c)(2)(A); 14 C.F.R. § 204— may well be relevant, but they do not make the Board's finding that Air Vermont had more experience unreasonable. Similarly, the weight attached by the Board to comparative landing rights at Boston's Logan Airport and to community support reflects a reasonable conclusion from the evidence.

■ Coastal's best argument is that it promised to provide with a Seneca II aircraft the same service as Air Vermont for $44,000 less than Air Vermont. Coastal argues that the Board rejected this proposal because it erroneously thought that passengers had to board the Seneca II over the wing; the Board overlooked the fact that the Seneca II had a rear door. However, the Board subsequently recognized its mistake, noted the existence of the rear door, and stated that the door was too small and too far off the ground to be satisfactory. As we read its reasoning in context, and giving the Board the benefit of the doubt, we believe the Board concluded that, all things considered, the Seneca II's back door did not change the result. We cannot say that this decision that Air Vermont was still the preferable carrier was unreasonable or outside the Board's statutory authority. *See* 5 U.S.C. § 706(2)(A), (C).

■ Coastal's procedural objections are totally without merit. The agency followed its own rules, the governing statutes, and the Administrative Procedure Act. Both the APA and the Board's rules allowed the Board's staff to make ex parte contacts with the FAA about Logan landing rights. *See* 5 U.S.C. § 557(d); 14 C.F.R. § 300.-2(c)(8). Neither the Constitution, the APA, nor the agency's regulations require the agency to engage in formal adjudicatory proceedings or to create a formal record to award a subsidy or grant. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *City of New Haven v. CAB,* 618 F.2d 955, 962 n. 11 (2d Cir. 1980); *Woodbury v. McKinnon,* 447 F.2d 839, 844 (5th Cir.1971); *see also Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). We are aware of no authority to the contrary.

*The decision of the Board is affirmed.*